6-22-2009: Historical Cell-Site Information
NMA:NS
F.#2012R00002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**13 MISC 576**

- - - - - - - - - - - - - - - - - - - - - X
IN THE MATTER OF AN APPLICATION           :
OF THE UNITED STATES OF AMERICA           :     SEALED APPLICATION
FOR AN ORDER AUTHORIZING THE RELEASE      :
OF HISTORICAL CELL-SITE INFORMATION       :
- - - - - - - - - - - - - - - - - - - - - X

Nadia I. Shihata, an Assistant United States Attorney for the Eastern District of New York, hereby applies to the Court for Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within seven days AT&T Wireless (the "service provider") disclose recorded information identifying the base station towers and sectors that received transmissions from (631) 398-7841, a telephone issued by the service provider and subscribed to by Barbara Kanakis, 104 Doncaster Avenue, West Islip, New York 11795 ("SUBJECT TELEPHONE 1"); (516) 547-3939, a telephone issued by the service provider and subscribed to by Jeannine Pinero, 55 Bergen Place, Freeport, New York 11520 ("SUBJECT TELEPHONE 2"); and (732) 833-2945, a telephone issued by the service provider and subscribed to by Susan Ingrassia, 8 Red Fox Drive, Jackson, New Jersey 08527 ("SUBJECT TELEPHONE 3") (collectively, the "SUBJECT TELEPHONES"), at the beginning and the end of calls or text message transmissions, and the mobile switching center serving the SUBJECT TELEPHONES during any calls or text message

transmissions, for the period from March 1, 2012 to April 30, 2012 (collectively, "the HISTORICAL CELL-SITE INFORMATION").

In support of this application I state the following:

1. I am an Assistant United States Attorney in the Office of Loretta E. Lynch, United States Attorney for the Eastern District of New York. As such, I am a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d) and, as such, am authorized to apply for Orders authorizing the disclosure of the HISTORICAL CELL-SITE INFORMATION.

2. The Court is authorized to order the disclosure of the HISTORICAL CELL-SITE INFORMATION upon the government offering specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. 18 U.S.C. § 2703(d).

3. I have discussed this matter with a special agent of the Federal Bureau of Investigation (the "investigative agency"), who is involved in the investigation. Based upon my discussion with the agent, I believe that the information likely to be obtained is relevant to an ongoing criminal investigation as required by 18 U.S.C. § 2703(d). First, the investigative agency is conducting a criminal investigation into possible violations of federal criminal laws, including extortionate

collection of credit in violation of 18 U.S.C. § 894(a). Second, it is believed that JAMES FERRARA, PETER KANAKIS, NELSON PINERO and others known and unknown, have used the SUBJECT TELEPHONES in furtherance of the above offenses. Third, HISTORICAL CELL-SITE INFORMATION will further the investigation by helping to identify the location of the targets at the time the crimes occurred, the meeting places used by the targets, as well as corroborating video surveillance footage and information received from witnesses.

    4. Based upon discussions with a special agent of the investigative agency, the government hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation.

    a. John Doe has advised as follows, in sum, substance and in part:

    i. In or about 2005, John Doe began frequenting a gambling club located on Long Island, New York (hereinafter, the "Gambling Club"). While at the Gambling Club, John Doe was introduced to an individual named "Jimmy," who provided loans to players at the Gambling Club. Over the course of approximately six months to a year, John Doe obtained multiple loans from Jimmy, which he used, in part, to gamble at the Gambling Club. John Doe made payments to Jimmy

3

on these loans and, in approximately 2006 or 2007, owed Jimmy a balance of approximately $15,000. John Doe subsequently did not see or hear from Jimmy for several years. John Doe learned from others that Jimmy was ill and in the hospital during this time period.

      ii.  In or about 2011, John Doe was employed at a diner in Queens, New York (hereinafter, the "Queens Diner"). In or about 2011, Jimmy came to the Queens Diner with another individual and spoke with John Doe. During this encounter, Jimmy inquired about the balance of the debt that John Doe owed Jimmy.

      iii.  In or about March 2012, Jimmy came to the Queens Diner with two men – a white male and a Hispanic male – and spoke with John Doe. John Doe described the two men who accompanied Jimmy as "big" in stature. During this encounter, Jimmy stated, in sum, substance and in part, that he was "back collecting money from people" and, specifically, had collected money from "the butcher." According to John Doe, Jimmy appeared determined to collect money from John Doe and appeared to have brought the two men with him to show he was serious. Following this encounter with Jimmy and the two men who accompanied him, John Doe was nervous and feared that if he did not pay Jimmy, he would be physically harmed.

4

          iv. A few weeks later, on or about the evening of March 31, 2012, Jimmy returned to the Queens Diner with the same two men and told John Doe, in sum and substance, to have money in two weeks' time to pay him. At the end of this encounter, as Jimmy and the two men were leaving, one of the two men who accompanied Jimmy – the Hispanic male – briefly stayed behind and told John Doe, in sum and substance, to "do the right thing." As a result of the March 31, 2012 encounter with Jimmy and the two men, John Doe feared that if he did not pay Jimmy, he would be physically harmed.

          v. John Doe ultimately borrowed money from another individual and paid Jimmy $10,000 in cash in Queens, New York, to settle the debt.

          vi. John Doe has identified a photograph of JAMES FERRARA as "Jimmy" and a photograph of PETER KANAKIS as possibly being the white male who accompanied Jimmy to the Queens Diner on at least two occasions in March 2012 in an effort to collect the balance of Jimmy's loan to John Doe.

          b. Video surveillance footage from the evening of March 31, 2012 obtained from security cameras located on the premises of the Queens Diner corroborates the information obtained from John Doe. The video surveillance footage shows JAMES FERRARA entering the Queens Diner at approximately 10:59 pm, accompanied by PETER KANAKIS and NELSON PINERO. Upon

5

entering the location, the surveillance footage shows FERRARA, KANAKIS and PINERO near the entrance to the Queens Diner at approximately 11:00 pm interacting with John Doe, who appears to point the three men to another location in the Queens Diner. Approximately 40 seconds later, John Doe leaves the register area near the entrance to the Queens Diner. The surveillance footage next captures FERRARA, KANAKIS and PINERO exiting the Queens Diner at approximately 11:14 pm. The surveillance footage shows FERRARA and KANAKIS exiting first and briefly waiting in the front entrance area, before being joined by PINERO, and walking away from the Queens Diner together, thus corroborating John Doe's account of the Hispanic male briefly staying behind at the end of the March 31, 2012 encounter, and telling John Doe, in sum and substance, to "do the right thing."

   c. On or about November 8, 2012, a grand jury in the Eastern District of New York returned an indictment charging JAMES FERRARA and PETER KANAKIS with, among other crimes, participating in a conspiracy to use extortionate means to collect and attempt to collect extensions of credit from two individuals, one of whom is a butcher. See United States v. Ferrara, et al., Criminal Docket No. 12-695 (ENV) (S-1) (ECF Docket Entry No. 1). On or about December 27, 2012, a grand jury in the Eastern District of New York returned a superseding indictment adding charges against JAMES FERRARA and PETER KANAKIS

including, among other crimes, the use and discharge of a firearm during and in relation to the conspiracy to use extortionate means to collect and attempt to collect extensions of credit from the butcher. See id. (ECF Docket Entry No. 29).

   d. On or about November 27, 2012, FBI agents arrested PETER KANAKIS at his residence. At the time of his arrest, PETER KANAKIS had SUBJECT TELEPHONE 1 on his person.

   e. Telephone records reflect that on March 31, 2012, SUBJECT TELEPHONE 1 was in contact with SUBJECT TELEPHONE 2 and SUBJECT TELEPHONE 3. Since December 2011, SUBJECT TELEPHONE 2 has been registered to Jeannine Pinero at an address in Freeport, New York. Criminal history records indicate that NELSON PINERO is associated with the same Freeport, New York address.[1] Since January 2005, SUBJECT TELEPHONE 3 has been registered to Susan Ingrassia, known to be JAMES FERRARA's long-time girlfriend, at an address in New Jersey.[2] SUBJECT TELEPHONE

---

[1] Following his November 27, 2012 arrest, PETER KANAKIS was detained at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), where he remained until January 11, 2013. Records obtained from the MDC indicate that NELSON PINERO was on KANAKIS' "TRULINCS Inmate Contacts" list, which enabled KANAKIS to call PINERO from the MDC. PINERO is listed on KANAKIS' "TRULINCS Inmate Contacts" list with two different telephone numbers beginning with area code 516. Like SUBJECT TELEPHONE 2, both of these 516 telephone numbers are registered to Jeannine Pinero at the Freeport address.

[2] On or about November 27, 2012, JAMES FERRARA was arrested at the same New Jersey address.

7

3 is listed in SUBJECT TELEPHONE 1's phone contacts under the contact name "Jim."

    f. On March 31, 2012, SUBJECT TELEPHONE 1 called SUBJECT TELEPHONE 2 at approximately 5:02 pm. Thereafter, at approximately 5:03 pm and 5:04 pm, SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1. At approximately 5:28 pm, SUBJECT TELEPHONE 2 sent a text message to SUBJECT TELEPHONE 1. At approximately 5:29 pm, SUBJECT TELEPHONE 1 sent two text messages to SUBJECT TELEPHONE 2. At approximately 7:52 pm, SUBJECT TELEPHONE 1 called SUBJECT TELEPHONE 2. At approximately 8:14 pm, SUBJECT TELEPHONE 3 called SUBJECT TELEPHONE 1. At approximately 11:40 pm, SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1.

    g. Telephone records further reflect that SUBJECT TELEPHONE 1 was in contact with both SUBJECT TELEPHONE 2 and SUBJECT TELEPHONE 3 on the following additional dates in March and April 2012: March 5, 2012; March 12, 2012; March 13, 2012; March 14, 2012; March 23, 2012; and March 29, 2012; April 2, 2012; April 5, 2012; April 9, 2012; April 12, 2012; April 16, 2012; April 17, 2012; April 18, 2012; April 19, 2012; and April 25, 2012.

  5. Based upon the above proffer, the government requests that the Court issue Orders that provides, pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service

provider to supply within seven days the HISTORICAL CELL-SITE INFORMATION for the period from March 1, 2012 to April 30, 2012.

6. The government also requests that the service provider, and any other person or entity whose assistance is used to facilitate execution of the Orders be ordered not to disclose (a) the existence of the Order of Authorization; (b) the existence of the Order to Service Provider and (c) the production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscriber for the SUBJECT TELEPHONES, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONES, or to any other person, unless and until otherwise ordered by the Court. Any such disclosure might endanger the life or physical safety of an individual; cause a target to flee from prosecution; result in the destruction of or tampering with evidence; risk intimidation of potential witnesses; and/or seriously jeopardize the investigation.

7. No prior request for the relief set forth herein has been made except to the extent set forth above. The foregoing is affirmed under the penalties of perjury. See 28 U.S.C. § 1746.

Dated: Brooklyn, New York
July 29, 2013

Nadia I. Shihata
Assistant United States Attorney
(718) 254-6295

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**13 MISC 576**

- - - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION :
OF THE UNITED STATES OF AMERICA : SEALED ORDER TO
FOR AN ORDER AUTHORIZING THE RELEASE : SERVICE PROVIDER
OF HISTORICAL CELL-SITE INFORMATION :
- - - - - - - - - - - - - - - - - - - - - x

WHEREAS this Court has, upon the application of the United States of America, entered an Order pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within seven days AT&T Wireless (the "service provider") disclose recorded information identifying the base station towers and sectors that received transmissions from (631) 398-7841, a telephone issued by the service provider and subscribed to by Barbara Kanakis, 104 Doncaster Avenue, West Islip, New York 11795 ("SUBJECT TELEPHONE 1"); (516) 547-3939, a telephone issued by the service provider and subscribed to by Jeannine Pinero, 55 Bergen Place, Freeport, New York 11520 ("SUBJECT TELEPHONE 2"); and (732) 833-2945, a telephone issued by the service provider and subscribed to by Susan Ingrassia, 8 Red Fox Drive, Jackson, New Jersey 08527 ("SUBJECT TELEPHONE 3") (collectively, the "SUBJECT TELEPHONES"), at the beginning and the end of calls or text message transmissions, and the mobile switching center serving the SUBJECT TELEPHONE during any calls or text message transmissions, for the period from March 1, 2012 to April 30, 2012 (collectively, "the HISTORICAL CELL-SITE INFORMATION")

NOW THEREFORE, IT IS HEREBY:

ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d), that the service provider shall supply within seven days the HISTORICAL CELL-SITE INFORMATION for the period from March 1, 2012 to April 30, 2012;

IT IS FURTHER ORDERED that this Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the Federal Bureau of Investigation, the service provider and any other person or entity whose assistance is used to execute this Order; and

IT IS FURTHER ORDERED that unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction, the existence of the this Order or the production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscribers for the SUBJECT TELEPHONES, the subscribers of the telephones initiating incoming

calls to or receiving outgoing calls from the SUBJECT TELEPHONES, or to any other person.

Dated:   Brooklyn, New York
         July 29, 2013

_____
THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**13 MISC 576**

- - - - - - - - - - - - - - - - - - - - - -x
IN THE MATTER OF AN APPLICATION         :
OF THE UNITED STATES OF AMERICA         :   SEALED ORDER
FOR AN ORDER AUTHORIZING THE RELEASE    :   OF AUTHORIZATION
OF HISTORICAL CELL-SITE INFORMATION     :
- - - - - - - - - - - - - - - - - - - - - -x

        This matter having come before the Court pursuant to an application by Assistant United States Attorney Nadia I. Shihata, an attorney for the Government as defined by Rule 1(b)(1) of the Federal Rules of Criminal Procedure and a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d), requesting Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within seven days AT&T Wireless (the "service provider") disclose recorded information identifying the base station towers and sectors that received transmissions from (631) 398-7841, a telephone issued by the service provider and subscribed to by Barbara Kanakis, 104 Doncaster Avenue, West Islip, New York 11795 ("SUBJECT TELEPHONE 1"); (516) 547-3939, a telephone issued by the service provider and subscribed to by Jeannine Pinero, 55 Bergen Place, Freeport, New York 11520 ("SUBJECT TELEPHONE 2"); and (732) 833-2945, a telephone issued by the service provider and subscribed to by Susan Ingrassia, 8 Red Fox Drive, Jackson, New Jersey 08527 ("SUBJECT TELEPHONE 3") (collectively, the "SUBJECT TELEPHONES"), at the beginning and the end of calls or text message transmissions, and the mobile switching center serving the

SUBJECT TELEPHONES during any calls or text message transmissions, for the period from March 1, 2012 to April 30, 2012 (collectively, "the HISTORICAL CELL-SITE INFORMATION");

UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS THAT:

Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the government has offered specific and articulable facts showing that there are reasonable grounds to believe that the HISTORICAL CELL-SITE INFORMATION is relevant and material to an ongoing criminal investigation into possible violations of federal criminal laws, including extortionate collection of credit, in violation of 18 U.S.C. § 894(a), being conducted by the Federal Bureau of Investigation (the "investigative agency"); now therefore,

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d), that the service provider shall supply to the investigative agency within seven days the HISTORICAL CELL-SITE INFORMATION for the period from March 1, 2012 to April 30, 2012;

Good cause having been shown, IT IS FURTHER ORDERED, that this Order and the application be sealed until otherwise ordered by the Court, and that the service provider, its representatives, agents and employees, and any other person or entity involved in facilitating this Order shall not disclose in

any manner, directly or indirectly, by any action or inaction, the existence of this Order, the existence of the Order to Service Provider or the production of the HISTORICAL CELL-SITE INFORMATION to the listed subscribers for the SUBJECT TELEPHONES, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONES, or to any other person.

Dated:    Brooklyn, New York
          July 29, 2013

_____
THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK